# UNITED STATES DISTRICT COURT
для
Northern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | U.S. DISTRICT COURT – N.D. OF N.Y. |
| v. | ) ) ) | **FILED** May 07 - 2022  John M. Domurad, Clerk |
| **TRAMOND G. WALLACE, JR.** | ) | Case No. 5:22-MJ-216 (ATB) |
| **Defendant** | ) ) ) ) ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 6, 2022, in the county of Onondaga in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | Possession of firearm by prohibited person |
| Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B) | Possession with intent to distribute controlled substance, which violation involved 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine |

This criminal complaint is based on these facts:
See attached affidavit.

☒   Continued on the attached sheet.

MATTHEW WATERS
Digitally signed by MATTHEW WATERS
Date: 2022.05.06 20:00:45 -04'00'

*Complainant's signature*

Matthew V. Waters, Special Agent

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: 5/7/2022

*Judge's signature*

City and State: Syracuse, NY         Hon. Andrew T. Baxter, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew Waters, being first duly sworn, hereby depose and state as follows:

### PURPOSE OF AFFIDAVIT

1.      I make this affidavit in support of a criminal complaint and arrest warrant charging TRAMOND G. WALLACE, JR. ("WALLACE") with (1) the unlawful possession of a firearm by a felon, in violation of Title 18, United States Code, Section 922(g)(1), and (2) possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

### AGENT BACKGROUND

2.      I am the applicant herein and I am currently assigned to Group D-54A of the Drug Enforcement Administration (hereinafter DEA). I have been a DEA Special Agent since February 2020. I was previously employed as a Cincinnati Police officer from June 2008 until October 2019. During my employment with the Cincinnati Police Department, I spent approximately 6.5 years as investigator with the narcotics unit. I have submitted affidavits in the past in support of search warrants and applications for residences, GPS tracking devices, and stored electronic communications. I have arrested numerous individuals for violations of the Ohio Revised Code. I have also participated in the execution of numerous search warrants for controlled substances in which controlled substances, narcotics proceeds, and drug paraphernalia have been seized. I have also participated in the execution of many eavesdropping warrants, the subject of which was the possession and sale of narcotics. I have conducted extensive physical surveillance and surveillance assisted by electronic and GPS devices. I have interviewed and worked with many confidential and reliable informants, whose reliability and veracity has been verified through prior law enforcement investigations, and whose assistance has resulted in the controlled purchases of

narcotics, controlled substances, and marihuana and the introduction of undercover police officers to persons who engage in the sale of controlled substances. I have attended several schools and seminars, including those given by the DEA, HIDTA, and Cincinnati Police, which concern the enforcement of the laws prohibiting trafficking in narcotics and dangerous drugs, as well as the packaging and concealment of narcotics. I am also aware through my training and experience illegal drug traffickers will use vehicles they own or have control of to store and/or transport illegal drugs, illegal drug paraphernalia, and currency obtained from illegal drug sales. As a result of my training and experience, I am familiar with the language, conduct, and customs of people engaged in conspiracies to violate the narcotics laws of the United States.

3. I have personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Law Enforcement Officers of state and local law enforcement agencies, Special Agents, and Task Force Officers of DEA, I am fully familiar with the facts and circumstances of this investigation.

4. Because this affidavit is being submitted for the limited purposes of demonstrating probable cause to support a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts and circumstances that I believe establish probable cause for the complaint.

<u>**FACTS ESTABLISHING PROBABLE CAUSE**</u>

A. **Background of the Investigation**

5. In August 2021, United States Postal Inspectors (USPI) in California seized approximately 3.624 kilograms of a substance that field-tested positive for methamphetamine, shipped from California to a fictitious name at the SUBJECT RESIDENCE, an apartment located on Deerfield Road in the Town of DeWitt. Information regarding this seizure was passed to the

Drug Enforcement Administration (DEA) and the U.S. Postal Inspectors (USPI) in Syracuse, New York, who worked to identify and investigate the intended package recipient.

6. Between on or about April 14, 2021 and April 18, 2022, approximately 12 parcels varying in weight from approximately 2 to 9 pounds were shipped from California to the SUBJECT RESIDENCE. Through physical surveillance and trash pulls, agents recovered packaging which contained residue that field-tested positive for methamphetamine and was attributable to the SUBJECT RESIDENCE.

7. For example, on or about December 10, 2021, an agent observed WALLACE bring a white trash bag with black drawstring to his vehicle in the parking area for the SUBJECT RESIDENCE. Approximately 30 seconds later, the agent observed the vehicle driving away from a group of dumpsters that serve the apartment complex. The agent retrieved a white trash bag with a black drawstring from the dumpster that serviced the SUBJECT RESIDENCE. In the trash bag, agents found, among other things, a W2 for WALLACE, and a clear plastic bag containing an off-white crystal residue. The crystal residue field-tested positive for methamphetamine.

8. Additionally, on or about February 19, 2022 at approximately 2:03 p.m., a court-authorized tracker on the Subject Vehicle, used by WALLACE, traveled from the parking lot of the SUBJECT RESIDENCE to the area of the trash dumpsters for the Franklin Park Apartments, then left the area after about three minutes. At approximately 2:40 p.m., SA Waters arrived at the dumpsters for the Franklin Park Apartments and recovered a brown USPS express box from the recycling dumpster and a white plastic trash bag, with black drawstrings, which was tied completely shut from the front-most trash dumpster. Both of these items appeared to have been recently discarded because they sat on top of all the items near them in the dumpsters. The brown USPS express box bore USPS express label EJ 842 644 405 US. The label indicated the box was

sent by "Kanye White" of "2825 Windyhill Rd Marietta GA 30067" to "Tramond Wallace" at the SUBJECT RESIDENCE. The label indicated the package weighed 11 pounds 7.4 ounces and cost $107.05 to ship, and required a signature at delivery. The box contained a cut of piece of a plastic vacuum seal style bag inside. According to information from USPS, the sender paid the postage for the parcel by credit card and that a subject with the last name of "WALLACE" signed for the package at delivery. The white plastic trash bag, with black drawstrings appeared identical to the style of bag recovered in the earlier trash pull with WALLACE. From that bag, SA Waters recovered a knotted plastic baggie which appeared to have been cut open; an employee clock-out receipt for Individual A on February 15, 2022; and several cut open portions of plastic vacuum seal style bags (some of which bore a "N or Z"). According to Empower Federal Credit Union records, and WALLACE's phone records, Individual A is an associate of WALLACE. Agents also recovered from the trash bag two plastic vacuum seal style bags, which appeared to have been cut open, which each contained an off-white crystal residue. The residue was field tested and returned positive results for each for the presence of methamphetamine.

9. On or about March 28, 2022, law enforcement also seized more than $25,000 in U.S. currency from WALLACE's person as he traveled en route to California. On or about March 1, 2022, pursuant to a court-authorized search warrant, law enforcement seized an additional $20,000 in U.S. currency from a parcel destined for California, believed to be sent by WALLACE, based on, among other things, the fact that the parcel contained the packaging of an earlier USPS parcel addressed to the SUBJECT RESIDENCE, and GPS tracker on the Subject Vehicle being located at the East Syracuse post office where it was mailed shortly before the parcel was recovered.

10.     Based on the investigation, including the facts recited above, agents identified WALLACE as the intended recipient of the package containing methamphetamine, which was seized in August 2021 as described above, and as the intended recipient of the additional parcel deliveries from California, which agents believe also contained controlled substances. While performing physical surveillance at the SUBJECT RESIDENCE between approximately late November 2021 and May 6, 2021, law enforcement observed WALLACE entering and exiting the front common door for the SUBJECT RESIDENCE regularly. Subpoenaed utility records for the SUBJECT RESIDENCE show that WALLACE is the account owner for the SUBJECT RESIDENCE. Additionally, phone records showed that the cellular device subscribed to WALLACE was used to track packages on the U.S. Postal Service website, including the package that was seized in August 2021, and later suspected drug packages shipped to the SUBJECT RESIDENCE.

      **B.**    **Execution of Search Warrant and Discovery of Firearms and Controlled Substances at the SUBJECT RESIDENCE**

11.     On or about May 2, 2022, U.S. Magistrate Judge Andrew T. Baxter authorized a federal search warrant for the SUBJECT RESIDENCE, in the Town of DeWitt, based on suspected violations of Title 21, United States Code, Sections 841 and 846 (distribution and possession with intent to distribute controlled substances and conspiracy to do the same).

12.     On May 6, 2022, in Syracuse, NY, USPIs took possession of express USPS parcel EI192210093US, which was shipped from San Diego, California approximately two days earlier. This parcel was delivered on May 6, 2022 by USPIs at the SUBJECT RESIDENCE under the surveillance of law enforcement. The package was left in the hallway directly in front of the door to the SUBJECT RESIDENCE.

13. Several hours later, agents observed WALLACE arrive at the SUBJECT RESIDENCE and enter the front common door of the building. WALLACE exited the building approximately four minutes later and departed the area in a vehicle. WALLACE was stopped by a uniformed Onondaga County Sheriff Deputy as he left the SUBJECT RESIDENCE.

14. Law enforcement then executed the court-authorized search warrant. Inside the SUBJECT RESIDENCE, agents located the following items:

   a. one unloaded Glock Model 23 pistol bearing serial number WEC163;

   b. one unloaded Glock Model 27 pistol bearing serial number BNTE984;

   c. several rounds of live ammunition, including 9mm and 22 caliber;

   d. a plastic bag containing approximately 473.4 grams of an off-white chunky substance which field-tested positive for methamphetamine;

   e. several glassine envelopes, many of which were packaged into paper wrapped "brick" shapes, which contained a substance that field-tested positive for fentanyl and had an approximate aggregate weight of 288.1 grams;

   f. a bag of a powder which field tested positive for Fentanyl and had an approximately weight of 14.4 grams;

   g. the above-described parcel which contained a vacuum-sealed bag with approximately 10,000 blue round pills (stamped M-30);[1]

   h. U.S. currency; and

---

[1] A field test of the pills did not indicate the presence of a controlled substance. But in my training and experience, and based on the training and experience of other law enforcement agents familiar with these pills, it is not uncommon for a subsequent laboratory examination determine the presence of a controlled substance, even if the field test did not.

    i.  paperwork addressed to WALLACE, including pieces of mail addressed to WALLACE at another address, a W-2 form for WALLACE, a cable bill addressed to WALLACE at the SUBJECT RESIDENCE, and WALLACE's state identification card and U.S. passport.

  15.  WALLACE was read a DEA Advice of Rights form at the scene and WALLACE stated that he understood his rights and was willing to speak with agents. WALLACE stated, in sum and substance, that he had two guns inside the residence located in drawers in the bedroom next to the bed. WALLACE also stated in sum and substance that he had two "bricks" in his hallway closet. While executing the search warrants, agents found the two firearms and the "bricks" in the same locations that WALLACE indicated they would be. WALLACE stated that he also had marijuana inside the residence. Agents asked what was inside the package delivered to the residence today and WALLACE stated in sum and substance that he believed it should contain "pills."

  16.  Based on my training and experience, the packaging and quantities of substances found during the execution of the search warrant are consistent with the distribution of those substances to others, rather than personal use.

  17.  SA Waters contacted ATF SA Ryan Matter regarding the seized Glock pistols. SA Waters provided SA Matter with a description of the guns and their markings, and the serial numbers on the guns. Based on the training and experience of SA Waters and SA Matter, agents determined that the Glock pistols were not manufactured in the State of New York and therefore traveled in and affected interstate commerce.

  18.  According to a law enforcement criminal history database, on or about August 4, 2016, WALLACE pleaded guilty to one count of Criminal Possession of a Controlled Substance

in the Third Degree, in Cortland County Court, a felony. He was sentenced to 2 years' imprisonment and 2 years' post-release supervision.

## CONCLUSION

19. Based on the facts set forth above, I respectfully submit that there is probable cause to believe that TRAMOND G. WALLACE, JR. has violated (1) Title 18, United States Code, Section 922(g)(1), unlawful possession of a firearm by a felon, and (2) Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), possession with intent to distribute a controlled substance, which violation involved 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

MATTHEW WATERS
Digitally signed by MATTHEW WATERS
Date: 2022.05.06 20:02:09 -04'00'

Matthew Waters
Special Agent

I, the Honorable Andrew T. Baxter, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on May __7__, 2022, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Honorable Andrew T. Baxter
U.S. Magistrate Judge